**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| JIM J. REID, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | NO. 3:09-cv-1087-L |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on June 10, 2009. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On January 8, 2003, plaintiff Jim J. Reid (hereinafter "Plaintiff" or "Reid") filed an application for disability insurance benefits ("DIB"), alleging a disability onset date of January 7, 2003. (Administrative Record (hereinafter "Tr." at 19). His claim was denied by the state agency initially and on reconsideration, after which he requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before the ALJ on April 20, 2004, at which Plaintiff appeared with counsel and testified on his own behalf. (Tr. 1264-1309). The ALJ also received the testimony of vocational expert ("VE") Rebecca Hayes. (Tr. 1299-1308). At the hearing, Plaintiff amended his alleged onset date to January 7, 2002, and claimed disability due to diabetes; residuals of a kidney transplant; coronary artery disease and status post bypass surgery; pulmonary disease; peripheral vascular disease; diabetic neuropathy; and

vision problems. (Tr. 19). On February 8, 2005, the ALJ denied Plaintiff's request for benefits. (Tr. 19). Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on May 19, 2006, the Appeals Council remanded his case to the ALJ for further consideration of Reid's chronic obstructive pulmonary disease in order to consider its effect on Reid's ability to perform work related activities and to obtain medical expert ("ME") evidence in order to clarify the nature and severity of Reid's impairment. (Tr. 19). A second hearing before the ALJ was held on May 30, 2007, at which Plaintiff appeared with counsel and testified on his own behalf. (Tr. 19, 1310-1326). The ALJ also received the testimony of ME Dr. John Craig Billinghurst, M.D., and VE Suzette Skinner. (Tr. 19, 1310-1326).

On July 31, 2007, the ALJ denied Plaintiff's request for benefits, finding that Plaintiff had a combination of severe impairments including diabetes mellitus with neropathy, a history of kidney transplant with dialysis, congestive heart failure, coronary artery disease, compression fracture in the thoracic spine, and degenerative changes to the lumbar spine, (Tr. 22), but that Plaintiff retained the residual functional capacity for a modified range of sedentary work. (Tr. 29). In his decision, the ALJ considered the time period from January 7, 2002, Plaintiff's amended alleged onset date, through July 31, 2007, the date of the ALJ's decision. (Tr. 21). Plaintiff's date last insured was June 30, 2008. *Id*. Plaintiff again timely requested a review of the ALJ's decision by the Appeals Council and on February 13, 2009, the Appeals Council denied his request. (Tr. 12-14). Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002). Plaintiff filed his federal complaint on June 10, 2009. Defendant filed an answer on July 31, 2009. On September 30, 2009, Plaintiff filed his brief, followed by Defendant's brief on

January 7, 2010, and Plaintiff's reply on January 22, 2010.

<u>Standard of Review - Social Security Claims</u>:  When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence.  *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment.  *Villa*, 895 F.2d at 1022 (citations omitted).  When the Commissioner's findings of fact are supported by substantial evidence, they are conclusive.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

<u>Discussion</u>:     To prevail on a claim for disability insurance benefits, a claimant bears the burden of establishing that he is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505.  Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520.  Under the first four steps, a claimant has the burden of proving that

his disability prevents him from performing his past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform. *E.g., see Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). This burden may be satisfied either by reference to the Medical-Vocational Guidelines ("Grid Rules") of the regulations, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, or by expert vocational testimony or other similar evidence. *E.g., see Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). "A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the present case, the ALJ proceeded to step five. He found that Plaintiff had not engaged in substantial gainful activity since January 7, 2002, his amended alleged onset date. (Tr. 21). He was 64 years old as of the date of the ALJ's decision, with at least a high school education and the ability to communicate in English. (Tr. 32). He had past relevant work as a production manager and owner of a printing company, which VE Skinner stated would correspond to the Dictionary of Occupational Titles (DOT) occupations of "printer in a small print shop", "supervisor of a print shop", and "production superintendent of a print shop". (Tr. 31, 1317). The ALJ found Reid to have a severe combination of impairments, to wit: "diabetes mellitus with neuropathy, retinopathy and nephropathy[1]; history of kidney transplant and

---

[1] Neuropathy: an abnormal and usually degenerative state of the nervous system or nerves ; also : a systemic condition (as muscular atrophy) that stems from a neuropathy.

Retinopathy: any of various noninflammatory disorders of the retina including some that cause blindness.

Nephropathy: an abnormal state of the kidney ; especially : one associated with or secondary to some other pathological process.

dialysis; congestive heart failure, coronary artery disease, compression fracture in the thoracic spine, degenerative changes to the lumbar spine and history of cervical fusion" (Tr. 22), but that the combination of his impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 27).

The ALJ found Plaintiff to have a residual functional capacity ("RFC") for a modified range of sedentary work, subject to the following restrictions- occasionally lift / carry 10 pounds, with frequent lifting / carrying of less than 10 pounds; push / pull within strength limitations; stand or walk for 2 hours and sit for 6 hours in an 8-hour workday with normal breaks and an option to change position at 45 minute intervals; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; no overhead reaching due to a history of cervical spine problems; no hazards, dangerous machinery, or temperature extremes.  (Tr. 29).  He found that Reid's RFC would preclude him from performing his past relevant work, (Tr. 31), but that he had acquired work skills from his past relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy, to wit: "timekeeper", with 11,000 jobs in Texas and 150,000 jobs nationally; "classified ad clerk" and "classified ad clerk 2", with 3,000 jobs in Texas and 50,000 jobs nationally; and "payroll clerk" with 3,000 jobs in Texas and 40,000 jobs nationally.  (Tr. 32). The ALJ therefore concluded that Reid was not under a disability and denied his claim for benefits.  (Tr. 33).  Reid argues that the Commissioner did not establish the existence of other work that he can perform considering his age, education, previous work experience and transferrable work skills, and that the ALJ did not property evaluate his credibility.

---

For definitions, *see* Merriam-Webster's Medical Dictionary online, http://www.merriam-webster.com/medical/.

**First**, Reid argues that the Commissioner did not establish the existence of other work that Plaintiff can perform considering his age, education, previous work experience and transferrable work skills. At the May 30, 2007 hearing, VE Skinner unequivocally stated that jobs exist in both Texas and the national economy that an individual with Plaintiff's limitations could perform with little or no vocational adjustment. Those jobs included the occupations of classified ad clerk I and II and ad space clerk, all specifically within the printing industry, as well as the occupations of timekeeper and payroll clerk. (Tr. 1318). Reid argues that the testimony of VE Skinner at the second hearing on May 30, 2007 is contradicted by both VE Hayes' testimony at the first hearing on April 20, 2004 and the report of a certified rehabilitation counselor, H. Steven Carter, obtained by Plaintiff's counsel following the second hearing. (Pl. Reply 2-3; Tr. 1091-1095, 1303-1308).

The first hearing was held on April 20, 2004, before ALJ Walter Orr. (Tr. 1264-1309). Plaintiff Reid testified at that hearing, as did VE Rebecca Hayes. The ALJ asked VE Hayes to describe Plaintiff's past relevant work, (Tr. 1299-1301), and then asked her whether any of his acquired skills would be transferrable to sedentary work. *Id*. VE Hayes testified that Plaintiff's acquired skills would be transferrable to occupations "like" timekeeper, payroll clerk, and purchasing clerk. (Tr. 1302). Overall, the VE opined that his skills would be transferrable to 80,000 jobs in Texas and at least 800,000 nationwide, with the caveat that the work would need to be in a printing environment in order for there to be little or no vocational adjustment. (Tr. 1303). Upon examination by Plaintiff's attorney, the VE stated that none of the occupations she recommended were specifically within the printing industry according to the Dictionary of Occupational Titles (the "DOT"), but that she thought such jobs "could exist" in a printing

environment. (Tr. 1303-1304).

After the first hearing, the ALJ denied Plaintiff's request for benefits in a decision dated February 8, 2005. (Tr. 19). Plaintiff appealed and the case was subsequently remanded by the Appeals Council for further consideration of Reid's chronic obstructive pulmonary disease (COPD) in order to determine its effect on his ability to perform work related activities, and also to obtain clarifying evidence from a medical expert as to the nature and severity of Reid's impairment. (Tr. 19). On May 30, 2007, a second hearing was held before ALJ Orr, at which Plaintiff, Dr. Billinghurst, the ME, and Ms. Skinner, the VE, testified. (Tr. 1310-1326).

During the second hearing, Dr. Billinghurst described Reid's medical history, and the RFC that in his opinion would be appropriate contained the same limitations the ALJ ultimately included in his findings concerning Reid's RFC. (Tr. 29, 1314-1316). In both the ME's opinion and in the ALJ's findings, Reid retained the RFC for a modified range of sedentary work, subject to the following restrictions- occasionally lift / carry 10 pounds, with frequent lifting / carrying of less than 10 pounds; push / pull within strength limitations; stand or walk for 2 hours and sit for 6 hours in an 8-hour workday with normal breaks and an option to change position at 45 minute intervals; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; no overhead reaching due to a history of cervical spine problems; no hazards, dangerous machinery, and temperature extremes. (Tr. 29, 1315-1316).

The ALJ found that Reid had acquired work skills from his past occupation as a printer, to wit: "inspecting and evaluating products, controlling operation of equipment or systems, understanding written sentences and paragraphs in a work related document, solution appraisal, information organization, operation analysis, judgment and decision making and equipment

7

maintenance." (Tr. 32). The ALJ asked the VE whether occupations exist that could be performed by an individual of Plaintiff's age, education, past relevant work experience, the RFC as described by ME Billinghurst, and which require the skills acquired in Plaintiff's past relevant work, but no additional skills. *Id*. The VE testified that representative occupations such an individual could perform include "timekeeper", with 11,000 jobs in Texas and 150,000 in the United States; classified ad clerk I and II and ad space clerk, with 3,000 jobs in Texas and 50,000 in the United States; and payroll clerk, with 3,000 jobs in Texas and 40,000 jobs in the United States. *Id*.

Following the second hearing, Plaintiff's counsel obtained a certified rehabilitation counselor, H. Steven Carter, to prepare a Report of Vocational Analysis on Reid. In his report, Carter disagreed with the assessment given by VE Skinner at the second hearing. (Tr. 1091-1095). Carter noted that Reid had been employed solely in the printing industry since 1966, and stated that moving from a print shop to a clerical position, such as timekeeper or payroll clerk, in another industry would "require substantial retraining in computer applications associated with each specific vocation." (Tr. 1094). He stated that the print-industry occupations of ad clerk I and II and ad space clerk would require Reid to learn new procedures and processes and new and different forms of computer use, which would create an overall need for significant retraining. (Tr. 1095). He also opined that the types of movement associated with those positions, such as simultaneously handling phone calls and keyboard entries, would not be compatible with Reid's RFC limitations allowing for changes of position and his sitting / standing requirements. *Id*.

Plaintiff argues that VE Hayes' statement that any future work would need to be in a print-industry setting, along with counselor Carter's report that Reid would not be capable of

8

maintaining employment outside of the print industry and would require substantial retraining even to occupy a new position within the print industry, show that Plaintiff's reliance on the opinion of VE Skinner at the second hearing was not supported by substantial evidence. Despite Plaintiff's argument, the ALJ considered the medical evidence of record, the objective testimony of Plaintiff, the testimony of a medical expert, and the testimony of two vocational experts. The ALJ's hypothetical to the VE asked her to consider the RFC set forth by the medical expert, which incorporated all of the limitations that the ALJ ultimately found Plaintiff to have. He properly exercised his responsibility as fact finder in weighing the evidence and in incorporating limitations into his RFC assessment that were supported by the record. "These are precisely the kinds of determinations that the ALJ is best positioned to make." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

During the first hearing on April 20, 2004, the ALJ never posed a hypothetical question to VE Hayes; however, both the ALJ and Plaintiff's counsel discussed the transferability of Plaintiff's prior work skills with the VE. While VE Hayes was unable to reference a specific occupation within the print industry that Reid was capable of performing, she did express her opinion that the occupations she referenced from the DOT could be found within that industry. "[T]his Court has acknowledged that the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Carey v. Apfel*, 230 F.3d 131 at 145 (5th Cir., 2000).

During the second hearing on May 30, 2007, the ALJ asked VE Skinner to consider the RFC limitations as stated by ME Billinghurst, which were later adopted by the ALJ in his RFC

9

finding. Considering the limitations posed by the ME, the VE recommended a total of five jobs an individual with Reid's particular limitations could perform, including three occupations specifically within the printing industry in which Reid has been employed for over 30 years. There is substantial evidence to support the ALJ's decision that Plaintiff was capable of performing the jobs identified in the VE's testimony and therefore was not disabled within the meaning of the Social Security Act. *See Fortenberry v. Harris*, 612 F.2d 947 at 950 (5th Cir., 1980). Assuming, *arguendo*, that Plaintiff would be incapable of performing occupations outside of the print industry, the ALJ correctly identified three jobs, classified ad clerk I & II and ad space clerk, that Plaintiff could perform within the industry. Since the ALJ correctly identified at least one job that Plaintiff could perform, any error in including the "timekeeper" and "payroll clerk" jobs was harmless. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir., 2003), *citing Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir., 1988) (applying the harmless error doctrine in the disability benefits context).

**Second**, Reid argues that the ALJ did not property evaluate his credibility. The ALJ stated, to wit: "In summary, there are inconsistencies on the face of the evidence. Given the objective findings and the numerous inconsistencies, I find that the claimant's subjective allegations and contentions of pain and resulting symptamatology are exaggerated and not entirely credible." (Tr. 30). He noted that Reid mows the lawn, taking frequent rest breaks while doing so; continues to drive his car; prepares meals; (Tr. 26, 30); and that "[o]n a typical day, he gets up at 5:00 a.m., feeds the dogs, prepares breakfast and watches television. He vacuums and dusts once a week. He also uses a computer at home but notes that he experiences cramping in his hands." (Tr. 30). The ALJ found Reid's testimony credible only to the extent

that he was restricted to a limited range of sedentary work.  *Id*.

"It is within the ALJ's discretion to determine the disabling nature of a [Plaintiff's] pain, and the ALJ's determination is entitled to considerable deference."  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citations omitted).  The determination whether a Plaintiff is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence.  *See  Jones v. Heckler,* 702 F.2d 616, 621-622 (5th Cir. 1983).  Moreover, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling.  *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).  In the Fifth Circuit, an ALJ must give reasons for rejecting a claimant's subjective testimony only where the evidence clearly favors the claimant.  *Falco* at 163.  In his credibility assessment, the ALJ considered the objective medical evidence, Plaintiff's subjective testimony, and Plaintiff's activities of daily living.  His credibility finding is supported by substantial evidence.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the District Court enter its order AFFIRMING the decision of the Commissioner and its judgment DISMISSING this action with

prejudice. A copy of this recommendation shall be transmitted to counsel for the parties.

    Signed this 18th day of February, 2010.

                                                       WM. F. SANDERSON, JR.
                                                     UNITED STATES MAGISTRATE JUDGE

### NOTICE

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.